BARNETTE, Judge.
These appeals involve the conflicting claims of the heirs of Raymond H. Campbell, now deceased, and other collateral relatives of Noemie[1] Campbell Blanchard, who died in 1935, to real and personal property owned by her.
On December 19, 1968, Victor Campbell, a brother, filed a petition in the Civil District Court for the Parish of Orleans seeking appointment as administrator of the Succession of Noemie Campbell Blanchard, the widow of Justin Blanchard. Mr. Blanchard had died in 1925 leaving his widow Noemie Campbell without issue. All the parties to these proceedings are collateral heirs of Noemie Campbell Blanchard.
Raymond H. Campbell, Sr., a brother of Noemie Campbell Blanchard, died October 21, 1968, and his succession was opened by petition filed January 29, 1969. The property inventoried as belonging to his succession was the property owned by Noemie Campbell Blanchard and which Raymond Campbell claimed to the exclusion of the other collateral heirs by virtue of his acceptance and possession and the alleged nonacceptance by his coheirs for more than 30 years. Also, his heirs claim, additionally, exclusive ownership of the real property, consisting of a house and lot at 1020 Milan Street in New Orleans, through an alleged tax sale redemption “to Raymond H. Campbell, his heirs and assigns,” on January 10, 1969, pursuant to an agreement for redemption between Raymond H. Campbell and the alleged tax sale purchaser, Joseph M. Cortinas, dated September 29, 1960. Because of this alleged purchase from Cortinas, Mrs. Elizabeth C. Kean Campbell, widow of Raymond H. Campbell, claimed a community interest. An ex parte judgment was rendered on January 30, 1969, recognizing the widow in community and heirs of Raymond H. Campbell respectively and sending them in possession of the described property, being all the *331 property, real and personal also claimed by the administrator and other heirs of Noe-mie Campbell Blanchard as belonging to that succession.
On April 25, 1969, Mrs. Elizabeth C. Kean, widow of Raymond H. Campbell, Sr., died, and her succession was opened on April 30 by her children. Raymond H. Campbell, Jr., was appointed administrator. The property allegedly belonging to her succession is the property originally owned by Noemie Campbell Blanchard.
From final judgments rendered in the three succession proceedings adverse to the claims of the Raymond H. Campbell heirs they have appealed and the appeals have been consolidated in this court.
After the Succession of Noemie Campbell Blanchard was opened and Victor Campbell qualified as administrator, a suit was filed by the widow of Raymond H. Campbell; Elizabeth E. Campbell; Althee M. Campbell, wife of Francis T. Moore; Ruth V. Campbell, wife of Claude B. Walker; and Martin B. Campbell — all children of Elizabeth C. Kean and Raymond H. Campbell — seeking termination of the administration of the succession of Noemie Campbell Blanchard. They alleged that an administration was not necessary and that the property formerly belonging to Noemie Campbell Blanchard was owned by Raymond H. Campbell at the time of his death. The trial court denied a motion for summary judgment by the Raymond H. Campbell heirs based on a 30-year prescriptive period under LSA-C.C. art. 1030 and after hearing the pleadings, evidence and argument of counsel rendered judgment dismissing the petition for termination of the succession of Noemie Campbell Blanchard and upholding the right of the administrator to proceed according to law. From this judgment petitioners perfected an appeal. The other judgments appealed are a judgment rendered in the Succession of Raymond H. Campbell annulling the previous judgment therein of January 30, 1969, insofar as it related to the property belonging to the Succession of Noemie Campbell Blanchard and the judgment rendered in the Succession of Elizabeth C. Kean Campbell decreeing the inventory taken therein to be null and void.
Noemie Campbell Blanchard, who died without issue, was one of 14 children of the late Dennis John Campbell and Alber-tine N. Labauve. Of these children only Victor Campbell and Mauricetta Campbell are still alive, and of those dead only Raymond Campbell (whose children are the petitioners in this suit) and Dennis John Campbell died with issue. (The children of Dennis John Campbell are Dennis John, III, Vivian Campbell Schenck, and Carroll and Myrne Campbell.)
The facts leading to the present dispute are as follows: Justin Blanchard and his wife Noemie Campbell Blanchard owned a residence at 1020 Milan Street in the City of New Orleans and certain personal property consisting principally of homestead stock. In 1923 they remodeled the home converting it into a two-apartment dwelling, after which tenants were moved into the house and rent was collected. Following Justin Blanchard’s death, his succession was opened and Noemie Campbell Blanchard was put in possession. In the following year (1926) Raymond H. Campbell moved into the lower apartment of the Milan Street address. He moved in as a tenant on agreement to pay $30 per month rent. There is some dispute as to whether he also agreed to help take care of his sister Noemie, but this is not a material issue. He remained there until Noemie’s death in 1935 and, in fact, continued to reside in the lower apartment with his family until his death in 1968. The upper apartment, meanwhile, remained vacant and free access was had to it by other members of the family who used it to store certain possessions.
It seems clear from the testimony of Victor Campbell and Mauricetta Campbell that they, and in fact all of the brothers and sisters who were living at the time *332 of Noemie Blanchard’s death, permitted their brother Raymond to remain on the Milan Street premises out of consideration for a physicial disability which made it difficult for him to work. He was allowed to act as nonjudicial administrator of the estate which has at all times been solvent due to cash and homestead stock which was left in his possession. He was to pay all taxes and do whatever maintenance was necessary to keep the premises in good condition. It seems equally clear that Raymond Campbell understood this agreement and, with the possible exception of his agreement to repurchase the property which had been sold for taxes (which will be discussed below), there is no evidence that he ever claimed the property as owner to the exclusion of his coheirs. Nevertheless, his heirs claim that by operation of the law the other collateral heirs of Noe-mie Blanchard are precluded from sharing in her estate because of their nonacceptance thereof for more than 30 years, relying upon LSA-C.C. art. 1030, which provides as follows:
“The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immova-bles.”
This period is 30 years. LSA-C.C. arts. 1305, 3499 and 3548.
Article 1030 has given our Supreme Court no little difficulty in reaching a clear interpretation. This is ably discussed by Justice McCaleb, writing for the Court in Sun Oil Company v. Tarver, 219 La. 103, 52 So.2d 437 (1951). It is not a per-emption but prescription to relieve the succession and its representatives and the heirs who have accepted from the threat of adverse claims after 30 years, and is therefore a liberative prescription.
The official comments under LSA-C.C. art. 1030 state:
“This article means that one right or the other, either the right to accept or the right to renounce, whichever right or faculty the heirs should have exercised before the lapse of 30 years is prescribed at the end of the 30 years, in view of articles 940, 941, 1013-1015, 1017, 1023-1028, 1030 and 1031; and as against a mere possessor without title and without the benefit of prescription acquirendi causa, an heir at law, who is invested with seizin or the right of possession by mere operation of law and without having to manifest an intention to accept the succession, does not lose his right to accept by failing to exercise it within 30 years. Bendernagel v. Foret, 1919, 145 La. 115, 81 So. 869. * * *”
See also Tillery v. Fuller, 190 La. 586, 182 So. 683 (1938); Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768 (1918) ; Generes v. Bowie Lumber Co., 143 La. 811, 79 So. 413 (1918).
The Raymond Campbell heirs have pertinently pleaded LSA-C.C. art. 1030 since the plea of prescription is available only to the succession, or its representative, or a coheir who has timely accepted the succession, and it cannot be invoked by the trespasser or one holding land or other succession property without semblance of right or title. Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953); Sun Oil Company v. Tarver, supra; Succession of Seals, 142 So.2d 629 (La.App. 2d Cir. 1962).
In order for the prescriptive plea of the heirs of Raymond Campbell to be successful they must show not only that the succession in question was accepted by their father but also that it was neither expressly nor tacitly accepted by the other surviving brothers and sisters of Noemie Campbell Blanchard.
LSA-C.C. art. 988 provides:
“The simple acceptance may be either express or tacit.
It is express, when the heir assumes the quality of heir in an unqualified *333 manner, in some authentic or private instrument, or in some judicial proceeding.
It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir.”
That Raymond H. Campbell accepted Noemie’s succession is manifest. Numerous acts on his part including his payment of taxes on the real property, his endorsement of the homestead dividend checks made out to Noemie Campbell Blanchard, his living in the house following Mrs. Blanchard’s death, his acknowledgment of the one-fourth ownership in the house in his 1960 agreement for tax redemption of the Milan Street property from Cortinas clearly show an intention both express and tacit to accept the succession of his sister.
The remaining and crucial question is whether or not it can be said that the other heirs accepted the succession prior to the expiration of the 30-year prescriptive period. After a careful analysis of the testimony and evidence contained in the record before us, this court finds that the action of these heirs is sufficient to meet the requirement for acceptance set out in LSA-C.C. art. 988.
Clear evidence of an intention to accept the succession can be found in the testimony of Mauricetta Campbell to which the trial judge apparently gave credibility. She was confronted with financial problems in 1955 or 1956 and discussed with her brother Raymond the advantage to her of opening the succession of their sister Noemie. Raymond promised to begin paying her the $30 a month rent which he had previously paid to Noemie, whereupon she agreed not to insist that the succession be opened and possibly cause Raymond and his family to lose the right of occupancy of the residence. This testimony is not contradicted.
Furthermore, Victor Campbell’s testimony is to the effect that in 1949 or 1950 he and his brother Alfred and his sister Mauricetta placed certain personal effects and property which had belonged to their mother in the upper apartment previously occupied by their sister. This action certainly indicates that they considered themselves within their rights in using the property and thus their intention to accept the succession.
We are convinced from all the evidence that the surviving brothers and sisters of Noemie C. Blanchard agreed to permit Raymond Campbell to remain with his family at the Milan Street home of their sister. They were motivated by a fraternal concern for him and his family. They agreed that Raymond, who had. some disability, would continue his residence there on the condition that he keep up the premises and pay the taxes, though neither condition was fully complied with. Raymond’s continued possession of the property and nonjudicial administration of the homestead dividends under these conditions were not adverse or to the exclusion of his coheirs, but on the contrary in recognition of their coheirship. By the agreement with him as a coheir to act as a nonjudicial administrator and to occupy the residence they manifested an intent to accept their sister’s succession as coheirs. Had the coheirs leased the property to a stranger, or permitted occupancy for payment of taxes and upkeep, clearly, this would have been an exercise of their right of ownership. It was no less so because the leasee or occupant was a coheir whom they wanted to help.
We now address ourselves to the tax sale redemption and the claims of the Raymond Campbell heirs emanating therefrom.
The Milan Street property in question was purchased by the Atlantic Municipal Corporation owned by Joseph M. Cortinas at numerous tax sales from the State of Louisiana and the City of New Orleans for the years 1938, 1939 and 1940 after which *334 time Cortinas paid the taxes thereon until the contract for redemption by Raymond Campbell on September 28 [sic], 1960. A photocopy of the alleged contract filed in evidence is not signed by Campbell or Cor-tinas, but purports to be a reduction to writing of their agreement whereby Campbell paid $250 cash and executed a promissory note for $2,000, payable $38.67 monthly. The copy filed in evidence bears the typewritten signature of “Edward L. Boeschk R. c J/R.” It bears a stamp indicating its filing in the conveyance office “Sept. 9 [sic] 1960.” There is no dispute of the authenticity of this alleged agreement and it was filed in evidence by joint stipulation of counsel. Significantly, it recites in pertinent part: “Whereas Raymond H. Campbell has a claim for an undivided one fourth interest therein as a result of the death of his sister Neomi C. Blanchard.” (Emphasis added.) It further recites their agreement that upon payment of the $2,250, as stipulated, Cortinas would “ * * _ * sign an act of redemption, cancellation, quit claim, transfer, without warranty or disclaimer to Mrs. Neomi C. Blanchard, her heirs and assigns or Raymond H. Campbell, as directed by the said Raymond H. Campbell, of all his right, title and interest in and to the above described property.”
The act of redemption reciting payment of $2,250 paid in accordance with the foregoing agreement was executed January 10, 1969 (after Raymond Campbell’s death), and filed and recorded on January 14. This also was admitted in evidence by stipulation. It purports to convey Corti-nas’ right, title and interest “ * * * unto Raymond H. Campbell, his heirs and assigns * * *. ”
It should be noted that the agreement between Raymond Campbell and Cortinas for the redemption of the property clearly recognized Raymond’s one-fourth interest as an heir of his sister. This strongly implies the recognition of the rights of his coheirs and is certainly not an expression of claim adverse to them. Furthermore, the agreement was that the redemption, upon payment of the balance due, would be either to Noemie Blanchard’s heirs and assigns or Raymond Campbell as he would then “direct.” Raymond died before the redemption was completed. The “direction” to have redemption made to “Raymond H. Campbell, his heirs and assigns” we must assume was made by his heirs. We do not know what Raymond would have “directed” had he lived to complete the redemption. There is no evidence of an adverse claim by Raymond Campbell, but, to the contrary, much evidence of his recognition of the coheirship of his brothers and sisters. The redemption of the tax title was for the benefit of the succession of Noemie Campbell Blanchard, and the Raymond H. Campbell heirs acquired thereby no more than his one-fourth interest therein. Keller v. Haas, 209 La. 343, 24 So.2d 610 (1945); Murphy et al. v. Murphy, 136 La. 17, 66 So. 382 (1914); Malabar Corp. v. Warren Realty Co., Inc., 209 So.2d 145 (La.App. 4th Cir. 1968); Jacobs v. Metcalfe, 185 So.2d 845 (La.App. 3d Cir. 1966); White v. Lockhart, 129 So.2d 917 (La.App. 1st Cir. 1961); Ensminger v. Vampran, 15 So.2d 161 (La.App. 1st Cir. 1943).
For the foregoing reasons the judgments appealed in the three succession proceedings which have been consolidated for trial and appeal are each affirmed at appellants’ cost.
Affirmed.

. This name appears in the record as Noemie, Neomie and Neomi.